COUNTY OF PRESQUE ISLE *v.* PRESQUE ISLE COUNTY SAVINGS BANK.

1. BANKS AND BANKING—SUFFICIENCY OF NOTICE OF PLAN OF RE-ORGANIZATION.

Notice of plan of reorganization of bank, as published, which referred to two places where detailed plan for resumption of business was on file and available to all depositors, other creditors and stockholders, and which notice referred to statutes authorizing the plan adopted and to the trust agreement as to segregated assets which were to provide for payment of depositors and other creditors, constituted sufficient notice to all interested parties (3 Comp. Laws 1929, §§ 11898–11970, as amended by Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

2. SAME—REORGANIZATION—OBJECTIONS BY DEPOSITOR—LACHES—
ESTOPPEL.
    County, as depositor in closed bank, which had notice that the
    plan of reorganization involving an appropriation from fund
    composed in part of collections made on stock assessment for
    capitalizing reorganized bank was published according to stat-
    ute, had notice of the plan through county board of supervisors,
    and without having filed objections thereto within time per-
    mitted by statute, accepted the benefits of the plan after the
    bank reopened in accordance with such plan was guilty of laches
    and is estopped from protesting against the plan (3 Comp.
    Laws 1929, §§ 11898–11970, as amended by Act No. 8, Pub.
    Acts 1932 [1st Ex. Sess.]; Act No. 32, Pub. Acts 1933, as
    amended by Act No. 95, Pub. Acts 1933).

3. ESTOPPEL—ACQUIESCENCE.
    Where a party with full knowledge, or with sufficient notice or
    means of knowledge of his rights and all material facts, re-
    mains inactive for a considerable time or abstains from im-
    peaching a contract or transaction, or freely does what amounts
    to a recognition thereof as existing, or acts in a manner in-
    consistent with its repudiation and so as to affect or interfere
    with the relation and situation of the parties, so that the other
    party is induced to suppose that it is recognized, such acquies-
    cence operates to render the transaction unimpeachable al-
    though it was originally impeachable.

4. COSTS—PUBLIC QUESTION—BANK STOCK ASSESSMENT —REORGANI-
ZATION.
    No costs are allowed in suit by county to review appropriation
    of proceeds of stock assessment to capitalize reorganized bank,
    a public question being involved (3 Comp. Laws 1929,
    §§ 11898–11970, as amended by Act No. 8, Pub. Acts 1932
    [1st Ex. Sess.]; Act No. 32, Pub. Acts 1933, as amended by
    Act No. 95, Pub. Acts 1933).

Appeal from Presque Isle; Smith (Fred P.), J.
Submitted June 11, 1946. (Docket No. 35, Calendar
No. 43,409.) Decided September 11, 1946.

Bill by County of Presque Isle against Presque
Isle County Savings Bank, a Michigan Banking cor-
poration, and others to impress a trust upon working
assets of bank as well as upon segregated assets.
Decree for defendants. Plaintiff appeals. Affirmed.

*A. W. Wilcox,* for plaintiff.

*Carl R. Henry,* for defendant bank.

*Phillip J. Glennie* and *Paul E. Cholette,* for trustees of segregated assets.

*John R. Dethmers,* Attorney General, and *James A. Greene,* Assistant Attorney General, for Commissioner of Banking Department.

Sharpe, J. Plaintiff, county of Presque Isle, filed a bill of complaint against the Presque Isle County Savings Bank, the trustees of the segregated assets of the bank, and the commissioner of the banking department of the State of Michigan. The purpose of the bill, among others, was to review the method of collecting the stock assessment levy and the appropriation of the proceeds of that assessment to capitalize the reorganized bank.

The bank closed its doors in February, 1933, in conformity with the governor's bank moratorium order; and later opened under a conservator. A 100 per cent. stock assessment was levied upon the stockholders which resulted in obtaining $68,800 either in cash or in promissory notes which were secured by deposit of reissued bank stock.

In the summer of 1934 the reorganization of the bank was started under Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 12077-1 *et seq.,* Stat. Ann. 1943 Rev. § 23.91 *et seq.*). The plan of reorganization was formulated by the State banking department. Notice of the plan was published in a local newspaper of Rogers City and a copy of the notice was posted on the door of the bank. The plan provided for the levy and collection of a stock assessment of 100 per cent. upon the stockholders of the bank; that

the proceeds of the stock assessment were to become a part of the mass of assets of the bank; that the capital structure of the reorganized bank would be represented by sound assets; that 50 per cent. of the deposits as of February 11, 1933, should be. immediately available for payment by the reorganized bank; that 50 per cent. of the deposits would be waived and participation certificates issued for the depositors' proportionate interest in certain assets which were to be taken out of the assets of the bank and segregated in a trust set up by separate instrument.. The agreement creating the trust provided, among other things, that it was the duty of the three trustees, appointed by the commissioner of the banking department, to conserve the interests of the depositors and to liquidate the assets in the trust in a manner most advantageous to the depositors.

None of the depositors objected to the plan within the time limited for them to do so. The reorganized bank opened for business on October 6, 1934. When the representatives of the banking department made a division of the assets before the reopening of the bank, all assets including the assessments paid by the bank stockholders were considered to be a part of the general. mass of assets. A part of these assets was transferred to the reorganized bank to enable it to meet and pay 50 per cent. of the deposits of the old bank as of February 11, 1933, when the accounts were frozen, and an additional $70,000 was transferred to the reorganized bank and became a part of its capital. The remaining assets were allocated to the trust.

Since the reopening of the reorganized bank, the trust has paid 45 per cent. of the face of the participation certificates. Upon the reopening of the bank, plaintiff accepted the 50 per cent. dividend of its

deposit account. It also accepted the certificate of participation upon which it has accepted from the trust the following payments: $5,886.72 in December, 1936; $2,943.36 in January, 1938; $1,471.68 in May, 1940; and $2,943.36 in September, 1941. At the hearing it was estimated that an additional 5 or 10 per cent. of the face of the participation certificates might be paid, giving the depositors who were the holders of certificates from 75 to 77½ per cent. of their original deposits.

Plaintiff filed a bill of complaint. It claims that under a proper construction of the act creating the authority to reopen closed banks and the plan of reorganization, the proceeds of the stock assessment were for the benefit of the depositors and properly a part of the segregated assets. Plaintiff does not object to the plan in general, but objects to the manner in which it was administered, particularly the claimed unauthorized use of the proceeds of the stock assessment to capitalize the reorganized bank. The objection was first made in October, 1941, when the present suit was instituted.

In their answers to the bill of complaint, defendants gave notice of the following special defenses: that plaintiff failed to file objections to the plan with the circuit court within 30 days and is now precluded from bringing any action in law or equity attacking said plan of reorganization; that by accepting dividends and certificates of participation, plaintiff is estopped to question the validity of the plan; and that plaintiff knew of the plan and its operation and construction by the banking commissioner and the trustees of the segregated assets for a period of substantially six years and is now chargeable with laches which precludes any right of recovery; and that plaintiff's right of action, if any existed, is barred by the statute of limitations.

Plaintiff urged during the trial and upon appeal that Act No. 32, Pub. Acts 1933,* contains no authority for the use of the proceeds of the stock assessment to capitalize the reorganized bank; that the plan proposed by the banking commissioner contains no authority for such use of the proceeds of the assessment; and that the depositors, never having been informed by the notice of the use to be made of the assessments, did not consent to having the proceeds of the stock assessment used to capitalize the reorganized bank.

Defendants contend that plaintiff, in reality, is attacking the plan by contending for a different interpretation of the meaning of the plan than was stated and intended, and under which the plan was carried out. The banking commissioner and trustees urge that the depositors of the old bank, having filed no objections during the period provided for under the act, accepted the benefits resulting from the reorganization and, having waited more than seven years before objecting to the plan, are chargeable with estoppel and laches which precludes plaintiff from now objecting to the plan. The defendant bank urges that the depositors having consented to the plan are bound thereby; that under the plan it was proper to place in the general mass of assets the proceeds from the collection of the stock assessment and subsequently take out of the general mass of assets the new capital for the reopened bank; and that the old depositors are limited to the payment of their claims out of the trust assets and cannot look to the assets of the reopened bank for any deficiency.

The trial court filed an opinion in which he found:

_____

* As amended by Act No. 95, Pub. Acts 1933, see Comp. Laws Supp. 1940, § 12077–1 et seq., Stat. Ann. 1943 Rev. § 23.91 et seq. —Reporter.

"The plan was published in accordance with provisions of the statute and notice was given that unless the depositors objected within 30 days by filing appropriate proceedings in the circuit court for the county where the bank was situated, they would be deemed to have accepted the plan. The construction placed upon this statute and upon this plan which was formulated by the banking department, and which has been followed in substantially 175 reorganized banks, is to the effect that when the depositors accepted the plan they agreed to accept 50 per cent. of their deposit liability from the reopened bank, and to accept for the remaining 50 per cent. certificates of participation to be due and payable out of the segregated assets as and when these assets were liquidated.

"I hold no brief for this plan. A careful examination of its provision leads one to the conclusion that it operated preponderately to the benefit of the stockholders and of the reorganized bank, although the value to the community of a successful bank, which was possible under the plan, may well be conceded. However, the depositors by failing to object to the plan were deemed to have accepted it and its provisions, and further, in the acceptance of the certificates of participation they agreed to look solely to the segregated assets for payment of these certificates.

"It is not within the power of the court to change the statute nor to change the plan if it has been administered in conformity with the statute. The State Supreme Court has had occasion to pass upon the construction of this statute and upon various questions connected with the plan of reorganization. Their decisions in *Re Burger's Estate,* 276 Mich. 485; in *Culp* v. *First Commercial Savings Bank of Constantine,* 288 Mich. 646, and in others, satisfy me that it is the view of the Supreme Court that under this plan of reorganization the depositors have agreed to accept 50 per cent. of their deposit

liability from the reopened bank, and to look to the trustees of the segregated assets for the other 50 per cent.; that the reopened bank is not liable for any more than 50 per cent.

"Regardless of my own convictions in the matter, I feel compelled to reach the conclusion that the depositors cannot look to the reopened bank for any deficiency which may result when the segregated assets have been fully liquidated, and I am therefore, unable to grant any relief in respect to this item.''

The act requiring published notice, Act No. 32, § 7, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933 (Comp. Laws Supp. 1940, § 12077–7, Stat. Ann. 1943 Rev. § 23.97), reads:

"Upon the reopening of such bank or trust company or upon putting such plan into operation, the commissioner shall forthwith post a notice on the front door of such bank or trust company setting forth in full the details of such plan, and publish the same in a newspaper printed and circulated in the county, for two successive weeks; and shall state in said notice that upon application within thirty days next following the last publication of such notice to a court of chancery, of the county wherein the bank or trust company is located, such creditor or creditors, stockholder or stockholders, or depositor or depositors shall have the right to review said plan of reorganization; to have a determination made of the value of his or their claims against the bank or trust company, and the court in its discretion may order and decree the payment thereof in cash or by allocation of assets to said claimant or claimants of the value of his or their claims as so determined or said court may order and decree that said creditor or creditors, stockholder or stockholders, depositor or depositors shall accept and abide by such plan of reorganization, or make such other, or further order or decree, in the premises as shall be fair and equitable under all of the circum-

stances of the case. No appeal from said order or decree shall operate as a stay of the plan of reorganization. Failure to make such application within said thirty-day period by any such creditor, stockholder or depositor shall be deemed to be consent to such reorganization or plan. All expenses incurred under the provisions of this section shall be paid out of the assets of such bank or trust company.''

It is conceded that notice was published as required by the act, but the claim is made that the notice did not inform depositors that the proceeds of the stock assessment were to be used, in part, as capital for the reorganized bank. ·

The published notice provided in part as follows:

''Notice is hereby given that the above-named bank will resume business on the 27th day of September, 1934, or as soon thereafter as license is issued, under the following plan in accordance with the provisions of Act No. 32, Pub. Acts 1933, and Act No. 8, Pub. Acts 1932 [1st Ex. Sess.], for the State of Michigan, and all acts amendatory thereof, supplemental thereto, or in substitution therefor, now or hereafter in force; also in accordance with and under the order of the governor of the State of Michigan, the rules and regulations of the secretary of the treasury of the United States, and the commissioner of the State banking department of the State of Michigan, applicable thereto. ·

''A detailed plan for the resumption of business of said bank is now on file in the office of the commissioner of banking of the State of Michigan, and with the conservator of said bank, and will be available to all depositors and other creditors and stockholders of said bank during the legal banking hours of said bank.''

In our opinion the notice as published set forth the details of the plan upon which the bank was reopened. The notice referred to the trust agreement, the details of which were available to all

interested parties. The published notice called attention to the fact that the bank would resume business under the plan in accordance with the provisions of Act No. 32, Pub. Acts 1933, and Act No. 8, Pub. Acts 1932 (1st Ex. Sess.).* The above acts authorized the plan adopted. There was sufficient notice to all interested parties.

The record shows that the notice of the plan of reorganization was published in August, 1934; that the board of supervisors of the county of Presque Isle had notice of the plan; that the county of Presque Isle filed no objections to the plan; and that upon the reopening of the bank, the county through its county treasurer accepted the 50 per cent. dividend and certificate of participation and subsequently has accepted other dividends from the trust fund.

In *Dobbs* v. *Peoples State Bank*, 265 Ky. 117 (95 S. W. (2d) 1111), the court of appeals of Kentucky said:

"Though having actual knowledge of the reorganization, appellant did not act promptly, but brought this action more than three years after the reorganization was declared effective. In the meantime he acquiesced in the reorganization and reaped its benefits by accepting the depositor's refunding certificate and the dividends declared thereon. To permit him to recover at this late date would subject the new depositors to the payment of his claim and work a hardship on all those who had been induced by his acquiescence, and laches to rely on the validity of the reorganization. We are therefore constrained to the view that he is now estopped from recovering in this action, and that the demurrer to the plea of laches and estoppel was properly overruled."

---

* Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), amended Act No. 66, Pub. Acts 1929 (3 Comp. Laws 1929, §§ 11898–11970) by adding sections 65a, 65b, 65c, relative to closed banks.—REPORTER.

In *McSweeney* v. *Equitable Trust Co.,* 127 N. J. Law, 299 (22 Atl. [2d] 282, 139 A. L. R. 653), there was a delay of three years and two months between the date of approval and the time of the objection by the depositor. It was there said:

"In 19 Am. Jur. p. 676, § 62, 'Estoppel' is defined: 'The rule is well recognized that where a party, with full knowledge, or with sufficient notice or means of knowledge of his rights and of all the material facts, remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to acquiescence and the transaction, although originally impeachable becomes unimpeachable.' See 10 R. C. L. p. 694, and 21 C. J. S. p. 1206."

See, also, *Lansing Drop Forge Co.* v. *American State Savings Bank,* 273 Mich. 124 (104 A. L. R. 1199).

Plaintiff, having had notice of the plan of organization and having acquiesced in the operation of such plan by accepting the benefits thereunder; and having waited more than seven years before voicing any protest, has been guilty of laches and may not now be heard to voice its protest.

The decree of the trial court is affirmed, but without cost as a public question is involved.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.